```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------X

CRAIG BEEM and CKB ADVISORS LLC,

                Plaintiffs,            14 Civ. 9046

     -against-                         OPINION

NOBLE GROUP LIMITED,

                Defendant.

-----------------------------------------X

A P P E A R A N C E S:

          Attorneys for Plaintiffs

          MCMENAMIN LAW GROUP
          460 Park Avenue South, 12th Floor
          New York, NY 10016
          By:  Paul R. McMenamin, Esq.


          Attorneys for Defendant

          MINTZ, LEVIN, COHN, FERRIS, GLOVSKY & POPEO, P.C.
          666 Third Avenue
          New York, NY 10017
          By:  Andrew J. Bernstein, Esq.
               Jessica W. Catlow, Esq.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/14/15

1

**Sweet, D.J.,**

Defendant Noble Group Limited ("Noble Group" or the "Defendant") has moved the Court to dismiss the Complaint filed by Craig Beem (also known as Craig Jefferies) and CKB Advisors LLC (collectively, "Beem" or the "Plaintiffs") for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), or, in the alternative, to dismiss Noble Group's claim for negligent misrepresentation for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Based on the conclusions set forth below, the Rule 12(b)(2) motion to dismiss is granted.

**Background and Prior Proceedings**

This is the second case in this Court involving these claims and parties. Beem and his company are suing Noble Group, a Bermuda-incorporated, Hong Kong-based global supply chain conglomerate covering agricultural and energy products, claiming misrepresentation and breach of contract regarding an alleged agreement whereby Noble Group retained the Plaintiffs to find a candidate to fill an open executive position. (See generally Complaint, Dkt. No. 1.) In the previous case, which also included Noble Group's American arm, Noble Americas Corporation, the Court dismissed the claims against the American subsidiary

2

under Fed. R. Civ. P. 12(b)(6), and dismissed claims against Noble Group, the China-based parent company, for failure to effect proper service. See generally Beem v. Noble Am. Corp., No. 14 Civ. 2632, 2014 WL 5317756 (S.D.N.Y. Oct. 17, 2014).

This is the first major motion in the new case, which was filed on November 13, 2014. (See Dkt. No. 1.) The instant motion to dismiss was filed on May 11, 2015 (Dkt. No. 13), the Plaintiffs filed their opposition on July 20 (Dkt. No. 19), and the Defendant filed its reply on August 11. (Dkt. No. 21.) The motion was heard on September 16, 2015.

**Facts**

The following facts, drawn from the Complaint and the parties' submissions, are construed in the light most favorable to the Plaintiffs. See Brown v. Web.com Grp., Inc., 57 F. Supp. 3d 345, 350 (S.D.N.Y. 2014).

Craig Beem is the founder of CKB Advisors LLC, a firm that recruits and places candidates into senior level corporate positions, primarily for companies in the energy sector. (Beem Aff., Dkt. No. 20, ¶ 2. In late 2012 and early 2013, Beem worked with Noble Group to identify candidates for a Hong Kong-based position as Noble Group's Global Head of Human Resources. (See Complaint Ex. C.) The origins of Beem's work on the

3

position are murky, and Beem does not allege the existence of a formal, written contract for his services. The Complaint alleges that Noble Group "directly" solicited Beem to work on the project via an email from Paula Wearmouth, the assistant to its CEO, Yusuf Alireza. (Complaint ¶ 12.) Although Beem attaches several email exchanges between himself and Wearmouth regarding various candidates for positions at Noble Group (e.g., Complaint Exs. C, D, & F), there is no email in the record where Wearmouth or any other Noble Group representative contacts Beem and asks him to find a candidate to fill the HR position.[1] Noble Group contends that it did not solicit Beem's services; Wearmouth states in a signed declaration that Beem's involvement began when he sent her an unsolicited email regarding the position on November 20, 2012. (Wearmouth Decl., Dkt. No. 12 ¶ 4.)

That email exchange does appear in the attachments to Plaintiffs' Complaint. (Complaint Ex. C at 1.) In it, Beem writes to Wearmouth "One question: would Yusuf [Alireza] be looking for a Global head of HR? I have several very senior applicants that would be interested? Please let me know?" (Id.) Wearmouth responds, "Hi Craig[.] Regarding a Global head

---

[1] Beem had previously worked with Noble Group regarding the placement of a different candidate, Rachel Simon, for a different position. (See Complaint Ex. D.)

4

of HR, Yusuf would be interested to know your top three choices please." (Id.)

In an email exchange with Wearmouth on December 11, 2012, Beem suggests that Alireza interview a candidate named Mark Towson, who "is currently head of Global HR at Weatherford and he would be interested in leading the HR team at Noble in Hong Kong." (Id. at 5.) Wearmouth responds that Alireza would be interested in interviewing Towson. (Id.) Later in December, in an email exchange with Beem and Towson, Wearmouth confirms a Skype interview between Towson and Alireza for the evening of January 14, 2013. (Id. at 13-14.) On January 11, however, Wearmouth informed Beem that Towson's interview would be cancelled because Noble Group was in the "final stages" of hiring another candidate. (See id. at 22; Complaint ¶ 20.) Noble Group did end up hiring Towson for the position in June of 2013, but claims that it did so through "another recruitment firm." (Sundavadra Decl., Dkt. No. 11 ¶ 11.)

Separately, Beem contends that he recruited another candidate, Robert Fuller, who Noble Group ended up hiring as a "senior trading executive." (Complaint ¶¶ 30-33.) There is no email traffic regarding Fuller similar to the exchanges between Wearmouth and Beem regarding Towson; instead, Beem attaches an email from him to Wearmouth introducing Fuller's business and offering to set up a meeting (Complaint Ex. F.), but does not

5

allege that Noble Group ever responded. Wearmouth states in her declaration that she did not respond to the email and that Noble Group did not hire Fuller. (Wearmouth Decl., Dkt. No. 10 ¶¶ 4-5)

**Applicable Standard**

"To establish personal jurisdiction, [a plaintiff] must show that [the defendant] has minimum contacts with the forum state and was properly served." Salmassi e Kfr. v. Euro-Am. Container Line Ltd., No. 08 Civ. 4892, 2010 WL 2194827, at *4 (S.D.N.Y. June 1, 2010) (citations omitted). Once a defendant has raised a jurisdictional defense on a Rule 12(b)(2) motion to dismiss, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant. DiStefano v. Carozzi N. Am. Inc., 286 F. 3d 81, 84 (2d Cir. 2001). In a diversity case such as this one, personal jurisdiction is determined in accordance with the law of the state in which the court sits, with federal law applicable only for the purpose of deciding whether a state's assertion of jurisdiction is acceptable under the Due Process clause. Met. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996).

**The Motion to Dismiss is Granted**

Beem alleges that there is both general jurisdiction over Noble Group pursuant to N.Y. C.P.L.R. § 301 and specific jurisdiction pursuant to N.Y. C.P.L.R. § 302, which allows for jurisdiction over a foreign defendant when the cause of action arises out of activity conducted within or affecting New York. See Cordice v. LIAT Airlines, No. 14 Civ. 2924, 2015 WL 5579868, at *3 (E.D.N.Y. Sept. 22, 2015). Section 302 applies to causes of action arising from (1) the transaction of any business within New York or contracting anywhere to supply goods or services in the state; (2) the commission of a tortious act within New York, or (3) the commission of a tortious act outside New York that causes injury within the state, if the foreign defendant regularly does business, engages in a persistent course of conduct, or derives substantial revenue from New York, or else derives substantial revenue from interstate commerce and expects or should expect the tortious act to have consequences within New York. N.Y. C.P.L.R. § 302(a); Cordice, 2015 WL 5579868, at *3-4.

General Jurisdiction Has Not Been Established

A foreign corporation is subject to general jurisdiction only where its contacts are "so continuous and systematic, judged against the corporation's national and global activities, that it is essentially at home in that state." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014) (citing Daimler AG v. Bauman, 134 S.Ct. 746, 761-62 (2014)). Aside from exceptional cases, a corporation is at home only in the state where it is formally incorporated or where it has its principal place of business. Id. N.Y. C.P.L.R. § 301, meanwhile, allows for general jurisdiction over "corporate defendants who are present in New York with a fair measure of permanence and continuity." Brown v. Web.com Grp., Inc., 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014) (quoting Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 34 (1990)). Courts may also assert § 301 jurisdiction under the "solicitation plus" doctrine, which confers jurisdiction over entities that regularly solicit business in New York and engage in some commercial activity within the state. Id. (citing Schultz v. Ocean Classroom Found., Inc., No. 01 Civ. 7487, 2004 WL 488322, at *4 (S.D.N.Y. Mar. 15, 2004)).

Beem acknowledges in his Complaint that Noble Group is a Bermuda corporation with its principal place of business located

8

in Hong Kong. (Complaint ¶ 2.) He bases his assertion of general jurisdiction on Noble Group maintaining "several financial banking relationships in New York," including retaining J.P. Morgan to organize a 2011 tender offer. (See Complaint ¶ 4.) Additionally, Beem notes that while Noble Group sought to obtain credit in 2010, it held "road shows" in Hong Kong, Singapore, Taipei, London, and New York. (Pl.'s Opp. Br. at 18.) While these connections to the financial sector show that Noble Group is not a complete stranger to New York, they fall well short of being "so continuous and systematic as to render it essentially at home" here, see Daimler, 134 S.Ct. at 761, rendering general jurisdiction inappropriate. Beem does not allege that Noble Group regularly solicits business in New York, precluding any finding of jurisdiction under the "solicitation plus" doctrine.

Specific Jurisdiction under the "Transacts Business" Clause Has Not Been Established

Specific jurisdiction is inappropriate under § 302(a)(1), which covers transaction of business within New York or contracts to supply goods or services in the state, because Beem cannot make a prima facie case that Noble Group has done either. When analyzing jurisdiction under the "transacts business" clause, "courts examine the totality of the defendant's

9

activities within the forum in order to determine if the defendant's transacted business can be considered purposeful." Levans v. Delta Airlines, Inc., 988 F. Supp. 2d 330, 335 (S.D.N.Y. 2013) (quoting Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Inv'rs, 510 F.2d 870, 873 (2d Cir. 1975)). Purposeful activity is "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (citing Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007)). Here, the only potential purposeful actions toward New York to which Beem can point are his email exchanges with Wearmouth regarding the human resources position at Noble Group and Towson's candidacy for it.[2]

Those emails cannot serve as a basis for jurisdiction. The parties disagree about whether Wearmouth and Noble Group actively reached out to Beem, and thus to New York, about finding a candidate for the HR position, or whether Beem's email regarding potential candidates was unsolicited. Beem alleges in his Complaint that "Alireza's office at Noble engaged Plaintiffs[] directly, via email from Alireza's personal

---

[2] Although Noble Group's transactions with New York's financial industry, such as the tender offer and "road shows" discussed above, might qualify as purposeful actions directed toward the Empire State, they cannot serve as a basis for specific jurisdiction in this case because Beem's claims do not arise from those transactions. See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103-04 (2d Cir. 2006).

10

assistant, Wearmouth, for the particular recruitment search to secure a new Global Head of HR." (Complaint ¶ 12.) However, Beem does not include any copy of such an email in his papers. Noble Group insists that it did not solicit Beem's services; Wearmouth's declaration states that Beem's involvement began when he sent her an unsolicited email regarding the position on November 20, 2012. (Wearmouth Decl., Dkt. No. 12 ¶ 4.)

That email exchange, attached to Beem's Complaint as Exhibit C, strongly indicates that Noble Group had not previously approached Beem regarding the position. In it, Beem asks Wearmouth, "One question: would Yusuf [Alireza] be looking for a Global head of HR? I have several very senior applicants that would be interested? Please let me know?" (Complaint Ex. C at 2.) Had Wearmouth previously asked Beem to find candidates for the position, Beem would not have needed to confirm whether Noble Group was looking for candidates. Beem's unsupported assertion in the Complaint that Noble Group had previously solicited his services cannot outweigh this showing; while doubts about evidence must be resolved in favor of the plaintiff, "the Court is not bound by conclusory statements, without supporting facts." JB Aviation v. R Aviation Charter Servs., LLC, No. 14 Civ. 5715, 2015 WL 7009191, at *2 (E.D.N.Y. Nov. 12, 2015); see Jazini v. Nissan Motor Co. Ltd., 148 F.3d 181, 185 (2d Cir. 1998).

11

Even if Noble Group were to have reached out first, the emails between Wearmouth and Beem would not rise to the level of purposeful activity necessary to constitute the transaction of business in New York. By making such a solicitation, Noble Group, a Bermuda-incorporated, Hong-Kong based company, would be asking a New Yorker to set up a Skype call or videoconference between Towson, a job candidate located in Houston, and Alireza, who was physically located in China.[3] (See Complaint Ex. C at 13-14.) New York's connection to such a transaction is negligible; "[e]ven assuming that the Defendant[] knew that [it] [was] contracting with . . . a New York resident, such minimal contacts without more are insufficient to confer personal jurisdiction under New York's long-arm statute." Skrodzki v. Marcello, 810 F. Supp. 2d 501, 510 (E.D.N.Y. 2011). In Skrodzki, the Court rejected personal jurisdiction over a case where a Mississippi defendant had contracted with a New York Plaintiff to provide a crane that for a construction project in Poland. See id. at 510-511. Skrodzki cited the Second Department's decision in Bill-Jay Machine Tool Corp. v. Koster Industries, Inc., 29 A.D.3d 504, 505-06 (N.Y. App. Div. 2d Dep't 2006), which found no jurisdiction where a New York Plaintiff had contracted with a California corporation to ship equipment

---

[3] Another email exchange indicates that Alireza chose to meet with a different candidate for the position in Stamford, CT, rather than in New York. (See Complaint Ex. C. at 3-4.)

12

from New Jersey to Los Angeles. Similarly, in <u>Deufrains v. Karcauskas</u>, No. 12 Civ. 2576, 2013 WL 4806955, at *10-11 (E.D.N.Y. Sept. 9, 2013), the Court found that telephone and Skype calls between the Plaintiff and the Defendants regarding the formation and health of a California partnership were insufficient to establish specific jurisdiction under § 302(a)(1). These cases all stand for the proposition that limited electronic or telephonic communication between an out-of-state Defendant and a New York Plaintiff regarding services to be performed outside of New York, without more, will not justify long-arm jurisdiction under § 302(a)(1)'s "transacts business" clause.[4] Beem's suit would therefore be barred even if Noble Group had initiated contact regarding the human resources position.

<u>Tort-Based Specific Jurisdiction Has Not Been Established</u>

Beem cannot establish specific jurisdiction over Noble Group under N.Y. C.P.L.R. § 302(a)(2), which covers tortious acts committed within New York, or § 302(a)(3), which covers

---

[4] Similarly, jurisdiction would not be proper under § 302(a)(1)'s Contracts to Supply Goods or Services Clause, since the relevant services must be supplied "in the state." See <u>Levans</u>, 988 F. Supp. 2d at 336. The record here indicates only that Beem helped set up a Skype call from Texas to Hong Kong, and potentially a face-to-face meeting with another candidate in Stamford, Connecticut.

13

tortious acts committed outside New York that cause harm within the state, because he cannot make a prima facie case that a tort was committed. In order to sustain his burden on the jurisdictional question, the plaintiff "need not actually prove that defendant committed a tort but rather need only state a colorable cause of action." Sole Resort S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 106 (2d Cir. 2006). Beem is unable to do so.

Beem's Complaint alleges two causes of action: a claim for breach of contract, and a tort claim for intentional or negligent misrepresentation. (See Complaint ¶¶ 34-47.) The two claims substantially overlap; in alleging his misrepresentation claim, Beem declares that an "enforceable contractual relationship existed" between the parties, and that without Noble Group's alleged fraudulent misrepresentations that he would be paid for his services, he never would have entered into it. (See id. ¶¶ 35, 37.) In such situations, a plaintiff seeking to state a tort claim separate from his breach of contract claim must either 1) demonstrate a legal duty separate from the duty to perform under the alleged contract, 2) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract, or 3) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages. Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,

14

Inc., 98 F.3d 13, 20 (2d Cir. 1996); FPP, LLC v. Xaxis US, LLC, No. 14 Civ. 6172, 2015 WL 5123129, at *4 (S.D.N.Y. Sept. 1, 2015). This "well-settled test" ensures that contract actions are not improperly converted into fraud actions by mere allegations that a contracting party did not intend to meet its contractual obligations. Osan Ltd. V. Accenture LLP, 454 F. Supp. 2d 46, 52 (S.D.N.Y. 2006).

Beem's opposition brief argues only the first prong, alleging that a special relationship existed between the parties because executive search recruitment services involve "a high degree of sensitive, confidential, and proprietary information being shared between the client, recruitment representative, and prospective employer that demands confidences, trust, and fiduciary obligations and responsibilities toward the client (and by extension the prospective employer)."[5] (Pl.'s Opp. Br. at 21.) Beem cites to no case law, statute, or other authority for the proposition. In any event, Beem's argument fails because the relationship between recruiter and client is the subject of the putative contract between him and Noble Group, and "[i]n order to be actionable in tort, the independent legal duty must spring from circumstances extraneous to, and not

---

[5] Although Beem's Complaint seeks punitive damages on his misrepresentation claim, which he could not recover in a contract action, punitive damages do not qualify as "special damages" sufficient to support a separate fraud claim under New York law. IOP Cast Iron Holdings, LLC v. J.H. Whitney Capital Partners, LLC, 91 F. Supp. 3d 456, 479 (S.D.N.Y. 2015).

15

constituting elements of, the contract." Birchez Assocs., LLC v. Cohen, No. 06 Civ. 1346, 2010 WL 2680219, at *3 (N.D.N.Y. July 1, 2010). Here, because Beem had no legal connection to Noble Group "other than as a consultant, which forms the basis for the breach of contract," there is no basis for an independent tort claim. See id. And because there is no viable tort cause of action, there can be no specific jurisdiction pursuant to N.Y. C.P.L.R. § 302(a)(2) or (a)(3). See Jonas v. Estate of Leven, No. at 14 Civ. 3368, 2015 WL 4522763, at *15-16 (S.D.N.Y. July 27, 2015).

Defendants' motion to dismiss for lack of personal jurisdiction is therefore granted.

**The Court Declines to Reach the 12(b)(6) Motion**

Since there is no jurisdiction over the Defendant, the Court "lacks power to dismiss [the C]omplaint for failure to state a claim." Hertzner v. U.S. Postal Service, No. 05 Civ. 2371, 2007 WL 869585, at *8 (E.D.N.Y. Mar. 20, 2007) (citing Arrowsmith v. United Press Int'l, 320 F.2d 219, 221 (2d Cir. 1963)). Therefore, although the analysis of the Defendant's motion to dismiss the Plaintiffs' tort claim for misrepresentation largely dovetails with the analysis of tort-based specific jurisdiction pursuant to N.Y. C.P.L.R. § 302(a)(2

16

& 3), this Opinion nonetheless does not reach the 12(b)(6) question.

## Conclusion

The Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is granted. The Court does not reach the request to dismiss Count I pursuant to Fed. R. Civ. P. 12(b)(6). The case is dismissed without prejudice.

It is so ordered.

New York, NY
~~August~~ , 2015

ROBERT W. SWEET
U.S.D.J.
12-11-15